51 F.3d 269
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edgar J. ORME, III, Defendant-Appellant.
 No. 94-5419.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 9, 1994.
Decided Mar. 27, 1995.
 
 ARGUED: Stephen Slater Boynton, Vienna, VA, for appellant. Robert Mason Thomas, Jr., Assistant United States Attorney, Baltimore, MD, for appellee. ON BRIEF: Lynne A. Battaglia, United States Attorney, Baltimore, MD, for appellee.
 Before ERVIN, Chief Judge, and MURNAGHAN and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Edgar Orme appeals his convictions for hunting Canadian geese in contravention of the Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. Sec. 703 et seq., and regulations promulgated thereunder. See 50 C.F.R. Sec. 20.21(i) (1988) (prohibiting the shooting of migratory game birds over a baited field). Orme challenges his convictions on three principal grounds: first, that he neither aided nor abetted the taking of migratory waterfowl in violation of the MBTA and its attendant regulations; second, that the spreading of feed on the Jamaica Point Farm did not constitute baiting; and third, that he should not be held responsible for bait that was found alongside a public road, even though the road runs through the Jamaica Point Farm property. In evaluating Orme's claims, this court benefits from the careful analyses conducted at both the magistrate and district court levels. Finding no basis for overturning Orme's convictions or his corresponding sentence, we affirm the judgment of the district court.
 
 I.
 
 2
 Mackall "Os" Owings purchased the Jamaica Point Farm in Talbot County, Maryland in 1958 and, over the course of the next thirty years, developed a "sanctuary feeding program" for Canadian geese on his property. Owings documented his successes in attracting the geese to his farm in a 1990 book entitled The Wizard is Os. Thousands of pounds of corn and grain were used to attract geese to the farm so that the birds could be hunted. By the late 1980s, Owings determined that he would need substantial help in order to maintain his feeding system. Owings began relying on appellant Orme as his primary assistant in the feeding program. Upon Owings' request, Orme recruited additional helpers, including one of Orme's codefendants, Stephen Grafton, to assist in the spreading of grain over the entire property. By the fall of 1992, there were approximately 11,000 geese on the Jamaica Point Farm.
 
 
 3
 The evidence indicates that Orme was second-in-command of the Jamaica Point "feeding" program. He ran the day-to-day operation of spreading grain across the property and, when called upon to do so, brought in others to assist in the project. Orme admitted leasing a $7,000 portion of the farm from Owings throughout the early 1990s. Orme offers no other explanation for his interest in the property other than the prospect of bringing hunters to the farm to hunt Canadian geese. He scheduled hunting excursions on the property and collected fees from the hunters. Additionally, Orme owned the farm equipment used to distribute the grain across the Jamaica Point Farm.
 
 
 4
 The record also reveals substantial efforts on Orme's part to facilitate the hunt on January 20, 1993. Orme admits that he participated in baiting that occurred during the first week of January 1993. The fact that Orme may not have actually been the person to spread the last supply of feed prior to the January 20 hunt is incidental; the critical factor is that he oversaw the feeding program. Nineteen hunters were on Owings' property on January 20, 1993, and had it not been for Orme's efforts, there would not have been a sufficient number of geese on the farm to support the hunting activities.
 
 
 5
 Officials of the U.S. Fish and Wildlife Service terminated the hunting activities and charged at least ten of the hunters with violations of the MBTA. Included in this group was Owings, who subsequently died prior to trial. All charges against him were accordingly dismissed. Orme pled not guilty and proceeded to trial with eight other defendants. The magistrate judge found Orme guilty of seventeen counts of aiding and abetting in the taking or attempted taking of migratory birds with the aid of bait. Orme's convictions were upheld on appeal to the United States District Court for the District of Maryland.
 
 II.
 A.
 
 6
 We review challenges regarding sufficiency of the evidence according to the standard articulated in Jackson v. Virginia, 443 U.S. 307, 319 (1979): whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt." In this context, we have held that the evidence is construed "in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). Orme underestimates the extent to which such a deferential standard impacts the likelihood of our overturning his convictions.
 
 
 7
 As was the case at both the magistrate and district court levels, substantial evidence existed to support Orme's convictions for having aided and abetted the illegal hunting of migratory waterfowl. Orme was one of two persons primarily responsible for the spreading of feed on the Jamaica Point Farm. Whether Orme was the one who baited the area during the ten days leading up to the January 20, 1993, hunt is irrelevant. As the district court correctly noted, for purposes of 50 C.F.R. Sec. 20.21(i), Orme only needs to have aided and abetted others in the taking of waterfowl with the aid of bait. We hold that it was within the sound judgment of the magistrate judge to conclude that sufficient evidence of aiding and abetting had been presented. By providing farm equipment to spread the feed, by making the arrangements for hunters to come to the farm, and by ensuring that adequate mechanisms existed for maintaining the population of Canadian geese on the farm, Orme furthered the attempt to take migratory birds on the Jamaica Point Farm. Moreover, the magistrate judge properly found that the portions of the farm being hunted were "baited areas" for purposes of the MBTA. See United States v. Chandler, 753 F.2d 360, 363 (4th Cir.1985) (whether hunting activities occurred over a "baited area" is a question of fact). For the reasons stated in the magistrate judge's published opinion, United States v. Dize, 839 F.Supp. 1170 (D.Md.1993), as well as those reasons offered by the district court in its memorandum opinion, United States v. Orme, No. S 93-0496 (D.Md. May 19, 1994), we affirm Orme's convictions.
 
 B.
 
 8
 Orme's challenge to the reasonableness of his sentence is without merit. We uphold a district court's factual findings in support of appellant's sentence unless those findings were clearly erroneous. United States v. Riley, 991 F.2d 120, 126 (4th Cir.), cert. denied, 114 S.Ct. 392 (1993); 18 U.S.C. Sec. 3742(e)(4) ("Upon review of the record, the court of appeals shall determine whether the sentence ... was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable."). The clear error standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 9
 Orme's punishment--a two year restriction on hunting migratory waterfowl, 30 days in a community treatment center, and fines of $5,200--is entirely reasonable in light of Orme's critical role in the luring of migratory waterfowl to the Jamaica Point Farm and in light of the maximum nine year prison term and $90,000 in fines that the district court could have imposed. Orme had known Owings since 1962, had been hunting on the farm for twenty-five years, and had provided Owings with substantial assistance in baiting the property prior to the January 1993 hunt. The magistrate judge's detailed factual findings concerning hunting on the Jamaica Point Farm are not clearly erroneous, a conclusion based not only on our independent review of the record, but on a similar review conducted by the district court. Had it not been for Orme's leadership, it is unlikely that the farm's "feeding program" would have continued operating in the last several years of its existence. Orme's sentence was not plainly unreasonable, taking into account the extent of his involvement in the feeding and hunting enterprise. Orme's convictions and sentence are accordingly
 
 
 10
 AFFIRMED..